```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION

HOWARD W. RAMSEY,

            Plaintiff,
    vs.                              Civil Action 2:11-CV-1123
                                     Judge Sargus
                                     Magistrate Judge King
MICHAEL J. ASTRUE, Commissioner
of Social Security,

            Defendant.
```

REPORT AND RECOMMENDATION

I.
Introduction and Background

This is an action instituted under the provisions of 42 U.S.C. §§405(g), 1383, for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income.[1] This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 11, the Commissioner's *Memorandum in Opposition*, Doc. No. 16, and plaintiff's *Reply Memorandum*, Doc. No. 17.

Plaintiff Howard W. Ramsey filed his applications for benefits on October 4, 2007, alleging that he has been disabled since October 1, 1999, as a result of mental illness, a herniated disc and cellutis. *PAGEID* 249. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

---

[1] The administrative law judge found that plaintiff had not established a severe impairment prior to the lapse of his insured status on September 30, 2004. The administrative law judge therefore considered the issue of disability only as it related to plaintiff's claim for supplement security income. *PAGEID* 67.

1

A video hearing was held on July 14, 2010, at which plaintiff, represented by counsel, appeared and testified as did Norman C. Hooge, who testified as a vocational expert. In a decision dated August 5, 2010, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *PAGEID* 65-77. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 4, 2011. *PAGEID* 59-61.

Plaintiff was 37 years old on the alleged disability onset date. He has a high school-equivalent education and past relevant work as a roofer's helper and general laborer. Plaintiff served in the military from November 1981 to May 1988.

## II.

### Plaintiff's Testimony

Plaintiff testified at the administrative hearing that he lives alone. *PAGEID* 96. His last significant work was in 1999, when he suffered a panic attack and was thereafter referred to mental health treatment. *PAGEID* 97. He attributes his failure to engage in significant work since that time to the manic phase of his bipolar disorder. *PAGEID* 98. He would typically start on a high, would then miss work and become depressed and then eventually quit. *Id.*

His bipolar disorder alternates between manic and depressed phases. "[E]very day I wake up, I don't know which way it's going to be." *PAGEID* 100. Symptoms of his manic phase include an inability to concentrate, hyperactivity, racing thoughts, accelerated speech and difficulty sleeping. *PAGEID* 99. He feels "like I'm going a mile a minute." *PAGEID* 101. When he is depressed, he isolates himself, is edgy and sleeps a lot.

*PAGEID* 100.  Prior to treatment, his depressed phase would last for 2 to 3 weeks; with treatment, that phase lasts only 3 to 5 days.  *PAGEID* 100.

He was dissatisfied with treatment at the Veteran's Administration ("VA") facility because treatment there consisted of "double stacking anti-depressants," *PAGEID* 101, for anxiety and depression even though plaintiff insisted that he suffered from bipolar disorder.  After two years, plaintiff sought out private psychiatric treatment from Larry Pfahler, M.D. *PAGEID* 102. The medication prescribed by Dr. Pfahler helps to reduce the length of plaintiff's "spells or cycles." *Id.*

Plaintiff has continuing problems with concentration and has to be reminded of appointments. *PAGEID* 103.

Plaintiff testified that he attempted to return to work in 2007 but injured his back. *PAGEID* 99.  Pain medications prescribed for that condition caused gastric problems. *Id.* He further testified that at the same time, he began drinking again. *Id.*  He continues to suffer constant pain in his lower back, which shoots into the left leg and occasionally the right leg. *PAGEID* 104-05. A discectomy only increased the pain. *Id.* He has attempted physical therapy on three different occasions, but the condition only worsened. *Id.*

Plaintiff estimated that he can walk no more than a quarter of a mile, stand for approximately 10 minutes and sit for 15 to 20 minutes. *PAGEID* 106. He has used a cane for the prior three years if he must walk any distance. *PAGEID* 106-07. He can lift and carry only light items such as a grocery bag.  He cannot bend or stoop. *Id.*

Plaintiff also has problems with his neck and shoulder. The pain in his neck radiates into his arms. *PAGEID* 108. He has trouble holding his coffee pot in the morning. *Id.* He sees a chiropractor and receives treatment at the VA pain clinic for his back and neck. *Id.*

On a typical day, plaintiff spends most of the day at home, although he tries to get out of the house once per day, as recommended by his psychiatrist. *PAGEID* 109. If he is over-active, however, he will be in pain for the next two days. *Id.*

### III.

### The Medical Evidence of Record.

#### Mental Impairment

Plaintiff underwent mental health treatment at Southeast, Inc. from July 2000 to May 2001. *PAGEID* 362-77. Psychiatrist R. Ware, M.D., noted on August 17, 2000, that plaintiff was pleasant and cooperative, exhibited normal speech, had a spontaneous affect and exhibited no psychosis. Dr. Ware diagnosed panic attacks with agoraphobia. *PAGEID* 373. On August 24, 2000, plaintiff reported that he noticed improvement with a new medication but that he was still experiencing "a lot of anxiety & panic attacks." *PAGEID* 372. He requested a note characterizing him as disabled "in order to receive some financial assistance." *Id.* According to Dr. Ware, plaintiff's inability to work was temporary. *Id*. In March 2001, plaintiff reported that his panic attacks had decreased from three or four attacks per day to two to three per week. *PAGEID* 369-70. In May 2001, he reported no panic attacks with Celexa and no adverse side effects from medication. His affect was bright and appropriate and his mood was euthymic. *PAGEID* 365-66. Services were terminated in July 2001 for failure to participate

in psychotherapy. Final diagnosis was panic attacks with agoraphobia; plaintiff was assigned a Global Assessment of Functioning ("GAF") score of 65. *PAGEID* 363-64.

In June 2007, plaintiff underwent a mental health consultation at the VA facility. *PAGEID* 554-57.  A staff psychiatrist diagnosed an adjustment disorder, mixed and rule out depression, not otherwise specified. Plaintiff was assigned a GAF score of 60. *PAGEID* 556.  In July 2007, plaintiff complained of "a lot of anxiety" and stress.  He was also drinking often. *PAGEID* 584. Two weeks later, plaintiff reported that psychotropic medications were "working well for him" and he denied alcohol use. *PAGEID* 577. He was assigned a GAF score was 78. *PAGEID* 578. The record shows that plaintiff continued to receive mental health treatment at the VA facility through June 2008. *PAGEID* 563-67, 739-42, 768-70, 799-803, 810-12.

In December 2007 and April 2008, state agency psychologists reviewed the record and concluded that plaintiff's mental impairments were not severe. *PAGEID* 608, 712.

Plaintiff began mental health treatment at the Lower Heights Christian Health Center ("LHCHC") in August 2009. *PAGEID* 987-89.  William Turek, D.O., diagnosed a depressive disorder. *PAGEID* 988-89. The following month, plaintiff reported that the prescribed psychotropic medications had a "good effect."  Plaintiff noted that this was the most stable emotionally he had ever been. *PAGEID* 981. In October 2009, although his manic episodes had continued, plaintiff reported that he was pleased with his emotional state. *PAGEID* 975. In November 2009, plaintiff reported to Larry Pfahler, M.D., that he had experienced a few days of depression. *PAGEID* 971. Dr. Pfahler recommended that he get out of his apartment. *Id.*

5

In March 2010, Dr. Pfahler completed a mental residual functional capacity assessment in which he indicated that plaintiff was moderately impaired in his ability to accept instructions from or respond appropriately to criticism from supervisors; to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes; to respond appropriately to coworkers or peers; to relate to the general public and maintain socially appropriate behavior; and to carry through with instructions and complete tasks. *PAGEID* 1046-48. Plaintiff was moderately to markedly limited in his ability to respond appropriately to changes in the work setting, *PAGEID* 1048, and was markedly impaired in his ability to perform and complete work tasks in a normal work day or week at a consistent pace; to work in cooperation with or in proximity to others without being distracted by them; to process subjective information accurately and to use appropriate judgment; to maintain attention and concentration for more than brief periods of time; to perform at production levels expected by most employers; to behave predictably, reliably, and in an emotional stable manner; to remember locations and workday procedures and instructions; to be aware of normal hazards and take necessary precautions; and to tolerate customary work procedures. *PAGEID* 1046-48. Dr. Pfahler concluded that plaintiff had "failed lots of jobs!! for whatever reason," *PAGEID* 1048, but believed that plaintiff was capable of managing his own funds. *Id.*

**Physical Impairment**

Following a September 2007 injury to his back, plaintiff was diagnosed with an acute lumbosacral strain. *PAGEID* 396. An MRI of the lumbar spine

6

showed chronic disc degeneration at L5-S1 associated with discogenic inflammation and an extruded disc behind the L5 vertebral body from the L4-L5 disc space. *PAGEID* 529-30.  Leon Hughes, M.D., directed that plaintiff not perform work requiring heavy lifting, repetitive bending, and prolonged standing for one month. *PAGEID* 560-61.  On October 15, 2007, Dr. Hughes refused plaintiff's request for more Percocet, but indicated that plaintiff remained unable to work until December 12, 2007, by which time "he will have been seen in the pain management clinic and condition stabilized." *PAGEID* 745. Plaintiff began using a TENS unit in November 2007. *PAGEID* 803.

Mounir Sanhaji, M.D., a pain management specialist, treated plaintiff from October 2007 until January 2009. *PAGEID* 674-76, 751-60, 782, 794-95, 796-99, 804-08, 856, 859-61, 869-74, 882-85, 907-10, 960-62.  In September, October and November 2007, Dr. Sanhaji wrote cursory statements of disability for plaintiff. *PAGEID* 620 (plaintiff "is not able to work. He had a herniated lumbar disc and will not be able to work for one month;" plaintiff was "being cared for at the VAOPC and has a herniated disc. He is unable to work until 12/12/07;" plaintiff was "unemployable until 1/20/08.") *Id*. On January 16, 2008, Dr. Sanhaji indicated that plaintiff could return to work on February 16, 2008. *PAGEID* 556.

State agency physicians reviewed the file in December 2007 and June 2008, and concluded that plaintiff could perform a reduced range of light work. *PAGEID* 610-17, 829-36.

On April 2, 2008, Rebecca Brightman, M.D., performed a left L4-L5 hemilaminotomy and discectomy for a diagnosis of left L4-L5 herniated nucleus pulposus. *PAGEID* 689-90. On April 5, 2008, plaintiff presented

7

to the emergency room complaining of postoperative pain in the low back radiating down his left leg. His neurological examination was normal and there was no evidence of cord compression. Prednisone was prescribed. *PAGEID* 694-703.  The following month, Dr. Brightman noted continued back pain and muscle spasms. She recommended physical therapy. *PAGEID* 713.

Although plaintiff was initially evaluated for physical therapy, in August 2008, Dr. Sanhaji noted that no physical therapy had begun. *PAGEID* 874.

Plaintiff underwent a second physical therapy evaluation on March 30, 2009. *PAGEID* 949-51.  Plaintiff presented with low back and radicular lower extremity pain, left greater than right, with range of motion and strength deficits and some diminished sensation in the left lower extremity.  The physical therapist noted that plaintiff had good rehabilitation potential. *PAGEID* 950. On April 29, 2009, however, the physical therapist noted plaintiff's failure to appear for therapy or to comply with his home exercise program. Plaintiff also reported that he hurt all over. *PAGEID* 944.          Plaintiff was approved for another month of therapy to complete his remaining visits. *PAGEID* 938. In May 2009, plaintiff's physical therapist again noted a failure to appear for therapy appointments. *PAGEID* 872. Plaintiff also acknowledged that he had not been consistent in his home exercise program. *PAGEID* 871.  Plaintiff's attendance over the ensuing two months was inconsistent. *PAGEID* 912-29.

Plaintiff underwent chiropractic treatment by Scott Gosselin, D.C., from February 10, 2010 to March 5, 2010.  *PAGEID* 1028-43.  Plaintiff reported improvement in his neck. *PAGEID* 1037.

On March 25, 2010, plaintiff presented to Dr. Turek at LHCHC for follow-up and medication refills. Dr. Turek warned plaintiff that the practice could terminate its treatment of him if he engaged in drug seeking behavior. *PAGEID* 1038-39.

In April 2010, plaintiff underwent a sleep study performed by neurologist, James P. Fulop, M.D., who diagnosed hypersomnia, a non-specific finding. *PAGEID* 1057-60. Dr. Fulop also reported that plaintiff was disabled by bipolar disorder and anxiety and was very limited by chronic pain. *PAGEID* 1119.

An April 2010 MRI of the lumbar spine showed postoperative changes at L4-L5 with no complications. There was no evidence of recurrent disc, marked mass-effect or canal stenosis. There was evidence of advanced degenerative disc disease at L5-S1 but no large focal disc protrusion. *PAGEID* 1050-51.

Thomas Moon, M.D., saw plaintiff at the VA pain clinic in May 2010. Plaintiff had an antalgic gait and used a quad cane. *PAGEID* 1091. He exhibited pain with range of motion and on palpation of his lumbar spine but had full muscle strength in both lower extremities. *PAGEID* 1092. The following month, plaintiff reported that he was happy with his pain relief. *PAGEID* 1123.

## IV.

### Administrative Decision

In his decision, the administrative law judge found that plaintiff's severe impairments consist of arthritis in the entire spine causing pain in his cervical, lumbar, and thoracic spine; degenerative disc disease of the cervical and lumbar spine; sleep apnea and insomnia; hypertension;

9

obesity; hernias; bipolar disorder; and gastroesophageal reflux disease. *PAGEID* 67. The administrative law judge went on to find that plaintiff's impairments neither met nor equaled any listed impairment. *PAGEID* 68.

The administrative law judge found that plaintiff has the physical residual functional capacity to perform light exertion. Specifically, the administrative law judge found that plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours in an 8 hour workday; and can sit for 6 hours in an 8 hour workday. The administrative law judge also found that plaintiff could never climb ladders, ropes or scaffolding but could occasionally climb ramps and stairs. He could occasionally stoop and kneel. *PAGEID* 69-75. The administrative law judge found that, from a mental standpoint, plaintiff could understand and carry out simple 1- to 3-step tasks, could not work at a forced or assembly line pace and could have only occasional contact with co-workers, supervisors and the general public. *PAGEID* 69.

Although this residual functional capacity would not permit the performance of plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is capable of performing other work that exists in significant numbers in the national economy. *PAGEID* 75-77. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *PAGEID* 77.

**V.**

**DISCUSSION**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the

administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In his *Statement of Errors*, plaintiff contends that the administrative law judge erred in his credibility findings.  In a related argument, plaintiff contends that, had the administrative law judge properly credited plaintiff's subjective complaints, he would have concluded that plaintiff is disabled.  Plaintiff also  argues that the administrative law judge improperly evaluated the opinions of Drs. Sanhaji, Pfahler and Fulop and should have secured the testimony of a medical expert. Because the Court concludes that the administrative law judge failed to

11

properly assess plaintiff's credibility, the Court recommends that the action be remanded to the Commissioner.

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, a court must look to the record to determine whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, the court must then determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id*. (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness' demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility

12

determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge found that plaintiff's subjective complaints are not credible to the extent that they were inconsistent with the residual functional capacity as found by the administrative law judge. *PAGEID* 71. From both a mental and physical standpoint, the administrative law judge specifically found "no objective medical evidence to show that the severity would prevent [plaintiff] from doing a job that would follow the . . . residual functional capacity" found by the administrative law judge. *PAGEID* 71-73. However, the administrative law judge merely summarized the medical evidence -- which includes surgical procedures, pain medication, psychotropic medication and mental health counseling -- and offered no explanation why that evidence failed to support plaintiff's subjective complaints. Under these circumstances, the Court is unable to evaluate the administrative law judge's credibility assessment or to conclude that that assessment is supported by substantial evidence.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the action be remanded to the Commissioner of Social Security for further proceedings.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in

question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: January 29, 2013                    *s/Norah McCann King*
                                                                Norah McCann King
                                                               United States Magistrate Judge